UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAY C. BASS                                                   CIVIL ACTION

VERSUS                                                        NO: 08-1288

UPS CAPITAL CORPORATION, ET                                   SECTION: J(3)
AL

## ORDER AND REASONS

Before the court is Defendant United Parcel Service, Inc.'s ("UPS") and UPS Capital Corporation's ("UPSCC") **Motion to Dismiss Plaintiff's First Supplemental and Amended Complaint for Failure to State a Claim and/or for More Definite Statement** (Rec. Doc. 16) under Rule 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure.  Specifically, UPS seeks dismissal of Plaintiff's claims against it; and UPS, in the alternative, and UPSCC, in its own right, seek a more definite statement of Plaintiff's claims.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff's action for employment discrimination against Defendants under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et seq., and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301 et seq., seeks declaratory, injunctive, and equitable relief, back pay, liquidated damages, compensatory damages, attorney's fees, and costs for alleged discrimination on the basis of age and for retaliation for complaints about age discrimination by UPSCC and UPS, the parent company of UPSCC.

In response to the Plaintiff's original complaint, UPS and UPSCC filed a Motion to Dismiss for Failure to State a Claim/More Definite Statement (Rec. Doc. 7).  This Court denied the defendants' motion "in light of Plaintiff's filing of his Amended Complaint . . . [which] does state sufficient facts to withstand a motion to dismiss as to Plaintiff's ADEA claim, as Plaintiff has alleged that UPS and [UPSCC] are joint employers, and, as such, UPS is liable for damages caused by the alleged illegal acts of [UPSCC]."  (Rec. Doc. 17).

**THE PARTIES' ARGUMENTS:**

As for Plaintiff's federal and state law discrimination claims, UPS argues that Plaintiff's allegations lead to the conclusion that UPS had no employment relationship whatsoever with Plaintiff.  Additionally, UPS argues that nowhere in his Complaint does Plaintiff allege that UPS was the ultimate decision-maker with regard to his termination.[1]  Specifically, UPS argues that all of Plaintiff's allegations regarding his

---

[1] An ADEA plaintiff may only seek redress for the discriminatory acts of his "employer."  Lusk v. Foxmeyer Health Corp., 129 F.3d 772, 777 (5th Cir. 1997).  Further, the Fifth Circuit's analysis on the issue of whether a parent or subsidiary was the employer for purposes of a discrimination claim "ultimately focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation."  Tipton v. Northrup Grumman Corp., 2007 WL 2188190, *2 (5th Cir. 2007) (quoting Lusk, 129 F.3d at 777).

2

discharge refer to actions of UPSCC or his UPSCC supervisors, and do not in any way allege action by UPS.  As a result, UPS argues that Plaintiff's allegations in his Amended Complaint about UPSCC's actions are all irrelevant to the issue of whether UPS was the final decision-maker in his discharge.  Additionally, UPS argues that Plaintiff cannot seek compensatory damages under the ADEA as a matter of law.

Finally, UPS and UPSC both argue that they are at least entitled to a more definite statement from the Plaintiff regarding his claims of discrimination.  First, UPS reiterates that it cannot respond to a complaint that does not specifically allege any actions of discrimination on its part.  Second, UPS/UPSC argue that even the uncertain allegations of the Amended Complaint do not facially reveal a discriminatory intent since Plaintiff admitted in his complaint that he was on probation for failing to meet production quotas at the time of his discharge, and since UPSCC actually extended his probationary period to allow him a chance to improve his performance.  Further, although Plaintiff does allege that his work during the probationary period was subject to more stringent underwriting standards, UPS/UPSC argue that he must allege more specific facts to show how his treatment was harsher than that given other employees.  Also, UPS/UPSC argue that they are entitled to a more definite statement from Plaintiff regarding his claim for liquidated

damages, which are recoverable only when an employer has "showed reckless disregard for whether its conduct was prohibited by the ADEA,"[2] since the Amended Complaint does not include any allegation of recklessness beyond a mere conclusory statement.

In opposition, Plaintiff argues that this Court's order denying UPS/UPSCC's first motion to dismiss under Rule 12(b)(6) and 12(e) actually renders their second motion moot because that order expressly stated that Plaintiff's amended complaint sufficiently alleged a joint-employer relationship between UPS and UPSCC to survive a motion to dismiss.  As such, Plaintiff argues that this Court has already determined that its Amended Complaint is sufficient to state a claim under the ADEA and the LEDL against both UPSCC and UPS as joint employers of Plaintiff.

In addition, Plaintiff argues that even if UPS's motion is not moot, his Amended Complaint meets the Fifth Circuit's four-part Trevino test for a finding of joint-employer status between UPS and UPSCC: 1) interrelation of operations; 2) centralized control of labor relations; 3) common management of labor relations; 4) financial control between the two entities.[3]  As for the first factor, Plaintiff argues that UPS and UPSCC share

---

[2] West v. Nabors Drilling USA, Inc., 330 F.3d 379, 391 (5th Cir. 2003).

[3] See Trevino v. Celanese Corp., 701 F.2d 397 (5th Cir. 1983).

the same website for submission of job applications.  Second, Plaintiff asserts that UPS and UPSCC exhibit centralized control of labor relations because Plaintiff received a UPS employee handbook at a corporate meeting in Dallas in August, 2005, which was used at that meeting as well as other corporate meetings.  As to the third factor, Plaintiff points out that UPS and UPSCC share the same agent for service of process.  Finally, Plaintiff notes that he received UPS stock as a bonus during his work with UPSCC, thus exhibiting the fourth factor under Trevino of financial control between UPS and UPSCC.

Finally, Plaintiff argues that he seeks compensatory damages against UPS alone under the LEDL and not the ADEA, and thus UPS's argument on that issue is unfounded.

In response, UPS suggests that Plaintiff's argument that this Court's prior order renders its second motion to dismiss moot is incorrectly based on the "law of the case doctrine," which only applies after an issue has been considered on appeal either by an appellate court or by the district court after remand.[4]  As such, UPS argues that this Court's prior order should not affect the present motion to dismiss.

---

[4] Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am., 272 F.3d 276 (5th Cir. 2001).

Furthermore, UPS cites the Northern District of Texas's decision in Torres v. Liberto to argue that Plaintiff's new allegations in the Amended Complaint with respect to the Trevino factors do not support a joint-employer finding as a matter of law. Mfg. Co.. 2002 WL 2014426 (N.D. Tex. 2002). In Torres, the court found that several subsidiaries' use of their parent company's handbook did not evidence the control necessary for a finding of joint-employer status. Id. at *5. Further, the Torres court held that because plaintiff was terminated by a supervisor of her direct employer, and not by a supervisor from a related parent or subsidiary of her direct employer, she could not prove the first of the Trevino factors. Id. UPS also points out that Torres held that a parent corporation's funding of a stock ownership plan for its subsidiaries' employees does not alone prove that the parent exercises the power of ultimate decision-maker in the employment decisions of its subsidiaries. Id. at *6. Further, UPS argues that the mere fact that UPS and UPSCC share a common agent for service of process, which is a commercial service agent commonly used by many foreign corporations, does not indicate sufficient relatedness under Trevino. Finally, UPS argues that the Fifth Circuit considers common corporate management as an "ordinary incident[] of a parent-subsidiary relationship," which does not prove joint

employer status.[5]

## DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss

As set forth by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief.  The Court must accept as true all well-pled allegations and resolve all doubts in favor of the plaintiff. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988).  However, motions to dismiss are "viewed with disfavor and are rarely granted."   <u>Texas Cable & Telecomm. Ass'n v. Hudson</u>, 265 Fed. Appx. 210, 215 (5th Cir. 2008).  Thus, a court should only grant a motion to dismiss under Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Id</u>.

### B. Rule 12(e) Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a party to

---

[5]   See <u>Schweitzer v. Advanced Telemarketing Corp.</u>, 104 F.3d 761, 765 (5th Cir. 1997).

move for a more definite statement when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). A party, however, may not use a Rule 12(e) motion as a substitute for discovery.  See Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959).  As a result of the liberal pleading standard set forth in Rule 8, Rule 12(e) motions are disfavored.  See Mitchell, 269 F.2d at 132. Rule 12(e) is ordinarily restricted to situations where a pleading suffers from "unintelligibility rather than want of detail." 2A Moore's Fed'l Prac. ¶ 12.18[1], at 2389 (2d ed. 1985).

**C.  Joint-Employer Status under Fifth Circuit Law**

The Fifth Circuit "generally evaluate[s] [joint] employer status under the four-part Trevino test, which involves consideration of (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 344 (5th Cir. 2007).  The Trevino test applies to claims involving joint-employer status under the ADEA. See Schweitzer, 104 F.3d at 765. In this analysis, the Fifth Circuit "places highest importance on the second factor, rephrasing and specifying it so as to boil down to an inquiry of 'what entity made the final decisions regarding employment

matters related to the person claiming discrimination.'" Id. (citing Chaiffetz v. Robertson Research Holding, Ltd., 798 F.2d 731, 735 (5th Cir.1986)) (internal quotations omitted). As such, all four factors in the Trevino test are considered as they relate to the overarching issue of "centralized control of labor relations." Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761,765 (5th Cir. 1997).

In addition, the Fifth Circuit considers several subfactors under the first "interrelation of operations" factor of the Trevino test: 1) the parent's involvement in the subsidary's daily decisions relating to production, distribution, marketing, and advertising; 2) shared employees, services, records, and equipment; 3) commingled bank accounts, accounts receivable, inventories, and credit lines; 4) the parent's maintenance of the subsidiaries books; 5) the parent's issuance of the subsidiaries checks; and 6) the parent's preparation and submission of the subsidiary's tax returns. Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778 (5th Cir. 1997).

### D. UPS/UPSC's 12(b)(6) Motion

As a preliminary matter, it should be noted that this Court has already indicated that Plaintiff's Amended Complaint "does state sufficient facts to withstand a motion to dismiss as to Plaintiff's ADEA claim, as Plaintiff has alleged that UPS and [UPSCC] are joint employers, and, as such, UPS is liable for

damages caused by the alleged illegal acts of [UPSCC]." (Rec. Doc. 17). Accordingly, UPS's motion is moot, and the "law of the case" doctrine is inapplicable. However, as the Court's ruling did not detail its finding on this point, the Court will briefly address the substance of UPS/UPSCC's 12(b)(6) and 12(e) motion.

First, it is significant that all the cases cited by UPS/UPSCC in which claimants could not show a joint-employer status between parent and subsidiary companies were in the context of motions for summary judgment or post-trial motions, and not in the context of preliminary motions to dismiss for failure to state claim. See, e.g., Lusk, 129 F.3d at 775 (MSJ); Tipton v. Northrup Grumman Corp., 2007 WL 2188190 (MSJ), *1 (5th Cir. 2007); Schweitzer, 104 F.3d at 762 (JNOV); Torres, 2002 WL 2014426 at *1 (MSJ). As such, these cases are procedurally distinguishable because they all dealt with more developed records than the one in this case. Accordingly, UPS/UPSCC's motion should be denied so that Plaintiff can develop the record, based on his sufficient allegations under Rule 12(b)(6).

Second, and with respect to the sufficiency of Plaintiff's allegations under Rule 12(b)(6), Plaintiff has alleged significant ties between UPS and UPSCC that may render them joint-employers under the Trevino test, as well as the Lusk subfactors. While UPS highlights the fact that Plaintiff does not directly allege that his discharge involved anyone other

than his supervisors at UPSCC, Plaintiff does allege connections between UPS and UPSCC that may bear out a joint-employer relationship between the two entities.  Specifically, Plaintiff has pointed out that UPS and UPSCC shared and actively used the same employee handbook and application website, that UPS and UPSCC shared common corporate officers, that UPSCC employees were compensated with UPS stock, and that the two entities shared the same agent for service of process.  While these allegations in themselves may not be sufficient to *prove* a joint-employer status between UPS and UPSCC, they are nonetheless sufficient to *state a possible claim* under the ADEA based on a joint-employer theory.  As such, UPS/UPSC's motion to dismiss UPS under Rule 12(b)(6) should be denied because Plaintiff has alleged sufficient facts to state a claim against UPS under the ADEA.

Additionally, UPS's citation to the Northern District of Texas's Torres decision is not persuasive on the issue of the joint-employer status of UPS/UPSCC.  First, as noted above, the decision in Torres was in the context of a developed summary judgment record, not a 12(b)(6) motion to dismiss.  Second, the allegations that UPSCC/UPS shared the same application website, and not only shared but actively used the same handbook, are more substantial that the facts at issue in Torres, in which the plaintiff merely alleged that the two purported joint-employers shared the same handbook but did not even clearly indicate when

11

or if she received the handbook.  Torres, 2002 WL 2014426 at *5.

### E. UPS/UPSC's 12(e) Motion

Further, UPS/UPSC's motion under Rule 12(e) should be denied because they are seeking a more definite statement as a substitute for discovery to determine the validity of Plaintiff's well-plead allegations of discrimination via a joint-employer theory under the ADEA and LEPL.

Additionally, the Fifth Circuit has held that mere use of the word "wilful" in pleading a complaint under the ADEA, combined with a request for liquidated damages, may be sufficient to state a claim for such damages.  See Cash v. Jefferson Assocs., Inc., 978 F.2d 217, 218 (5th Cir. 1992).  In this context, the Fifth Circuit held: "We do not need to go into the merits of the claim under 12(b)(6) motion. We only need to find that the pleading was sufficiently clear." Id.  Plaintiff in this case alleged that the defendants acted "with reckless disregard of Plaintiff's rights under the ADEA" and sought liquidated damages.  Complaint, ¶¶24 & 35(e).  As such, Plaintiff has stated a claim sufficient to withstand a 12(b)(6) motion, and the proper means of determining the merits of that claim is further discovery, not a 12(e) motion.

### F. UPS's Motion to Dismiss Claim for Compensatory Damages

Finally, UPS/UPSCC's argument that Plaintiff's claim for compensatory damages under the ADEA should be dismissed is

unfounded.  In his Response, Plaintiff notes that his amended claim for compensatory damages proceeds under the LEPL, not the ADEA, and is alleged against UPS only, since he has necessarily abandoned any state law claims against UPSCC because they were not proper as a matter of law.  As such, the claim for compensatory damages against UPS under the LEDL is not subject to dismissal under Rule 12(b)(6).

In sum, the Court has already found and the allegations bear out the fact that Plaintiff's Amended Complaint properly states a claim under the ADEA and the LEDL.  Thus UPS/UPSCC's motion under Rule 12(b)(6) is moot.  Furthermore, at this point further discovery, and not a 12(e) motion, is the proper avenue for the defendants to utilize in litigating this case. Accordingly,

**IT IS ORDERED** that UPS/UPSCC's **Motion to Dismiss Plaintiff's First Supplemental and Amended Complaint for Failure to State a Claim and/or for More Definite Statement** (Rec. Doc. 16) is hereby **DENIED**.

New Orleans, Louisiana, this 23rd day of October, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

13